The PRESIDENT.
— Many objéctions have been made at the bar to the insufficiency of this verdict. The first is, that the crown is not found to have been seized of the land in question, at the time of the grant to How-sen. According to the feudal system, the king was seized of all the lauds in Virginia, as chief magistrate; and, whatever may
have been the practice in England, *seizin in the crown is never found in this country, because that is the ultimate point, beyond which a party in tracing his title is not bound to go.
It was next contended, that by the patent to Howsen, only an estate for life passed, there being in it, no words of inheritance. That, for want of a seal to the patent, this grant was not embraced by the confirmation act of 1748, and of course, that the prior grant of the crown in 1668, to the proprietors of the Northern Neck, had deprived the crown of a right to make this grant to How-sen. That the assignment from Howsen to Alexander, “of all the land contained in this patent,” not appearing to have been endorsed on the patent, did not pass the land in question. — These and other objections were strongly insisted upon by the appellants counsel, and though they might all of them be controverted, yet they may be all falsely admitted in this case, and then how will the cause stand ?
In 1669 John Alexander entered, and was seized and possessed as the law requires. Not having title, he was a disseisor upon the proprietor of the Northern Neck, in whom the title was. The succession from him is continued regularly down, and each successor is found to have been seized and possessed as the law requires, and no entry of the proprietor’s is stated, or claim by them to the land, till the grant to Robertson in 1730. So,, that there is a clear seizin and possession of 61 years found under the disseisor, without any entry in the meantime to purge the dis-seisin. Here is a term, not only sufficient to give a title in ejectment, but to bar a writ of right, which alone would admit an enquiry into the mere right.
The counsel for the appellant observed, that the possession was not so found as to give a title ; not being found to have been uninterrupted. But the ancestors of the appellee being stated to have been successively seized and possessed from 1669 to 1730, and no interruption found, their own maxim “that what appears not, is to be taken as not having existed,” fixes the adverse possession to have been uninterrupted.
The justice of the maxim, nullum tempus-occurrit regi has been questioned, or rather the application of it to a case like this, where it is resorted to, to support a new grant to one citizen, to the prejudice of an antient grantee and possessor, for some defect in his. grant. But that either the reason of the rule extends, or that the rule itself was ever applied to preserve the title of a lord, we do not admit ; and believe the appellants counsel was misinformed, as to the point having been otherwise decided in the old General Court.
*On this point therefore, we affirm the judgment, without deciding on the other points. And we are happy in believing, that in establishing this ancient possession, we accord with the spirit, if not with the letter of the several laws passed since the year 1710, for the protection of such possessions, against attacks on the ground of legal defects.
Judgment affirmed.